**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Tondra Michelle Thompson, | No. CV-22-08067-PCT-SPL |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

Plaintiff challenges the denial of her application for disability insurance benefits under Title II of the Social Security Act ("the Act") by Defendant, the Commissioner of the Social Security Administration ("Commissioner" or "Defendant"). Plaintiff exhausted administrative remedies and filed a Complaint seeking judicial review of that denial. (Doc. 1.) The Court has jurisdiction pursuant to 42 U.S.C. § 405(g). Having reviewed Plaintiff's Opening Brief (Doc. 10, Pl. Br.), Defendant's Answering Brief (Doc. 16, Def. Br.), Plaintiff's Reply (Doc. 17, Reply), and the Administrative Record (Doc. 8, AR.), the Court hereby reverses the Commissioner's unfavorable decision and remands for additional proceedings.

## I.    THE SEQUENTIAL EVALUATION PROCESS AND JUDICIAL REVIEW

To determine whether a claimant is disabled for purposes of the Act, the Administrative Law Judge ("ALJ") follows a five-step process. *See* 20 C.F.R. § 404.1520(a)(4). The claimant bears the burden of proof at the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir.

1999). At the first step, the ALJ determines whether the claimant is engaging in substantial, gainful work activity. 20 C.F.R. § 404.1520(a)(4)(i). If the claimant is engaged in disqualifying work, she is not disabled. *Id*. If she is not engaged in such work, the analysis proceeds to step two, where the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. *Id*. § 404.1520(a)(4)(ii). If the claimant has no such impairment, she is not disabled. *Id*. If she does, the analysis proceeds to step three, where the ALJ considers whether the claimant's impairment or combination of impairments meets or is medically equivalent to an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. *Id*. § 404.1520(a)(4)(iii). If so, the claimant is disabled. *Id.* If not, the ALJ assesses the claimant's residual functional capacity ("RFC"), and proceeds to step four, where she determines whether the claimant is still capable of performing her past relevant work. *Id*. § 404.1520(a)(4)(iv). If the claimant can perform her past relevant work, she is not disabled. *Id*. If she cannot, the analysis proceeds to the fifth and final step, where the ALJ determines if the claimant can perform any other work in the national economy based on her RFC, age, education, and work experience. *Id*. § 404.1520(a)(4)(v). If the claimant cannot perform any work, she is disabled. *Id*.

The Court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). "Substantial evidence is more than a mere scintilla but less than a preponderance . . . It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotations and citations omitted). In determining whether substantial evidence supports a decision, the court "must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Id.* (quotations and citations omitted). As a general rule, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

///

## II.    PROCEDURAL HISTORY

Plaintiff filed an application for disability insurance benefits in December 2019 alleging disability beginning in February 2019. (AR. at 18, 236-42.) Plaintiff alleged several conditions impacting her ability to work, including a brain tumor, brain bleed, double mastectomy, memory loss, and seizures. (AR. at 265.)[1] The Commissioner denied Plaintiff's application at the initial and reconsideration levels of administrative review (AR. at 148-56, 158-66), and Plaintiff timely requested a hearing before an ALJ. (AR. at 167-68.) ALJ Patricia Bucci conducted a telephonic hearing on March 15, 2021. (AR. at 78-99.) At that hearing, both the Plaintiff and a vocational expert testified. (AR. at 78.)

Plaintiff testified, in part, that she is unable to care for herself due to cognitive difficulties, physical limitations, chronic pain, headaches, and anxiety (AR. at 85, 88), and that her average day consists mostly of staying at home, resting, reading, or attending doctor's appointments. (AR. at 86.) She testified that she has difficulties standing or walking without the assistance of her service dog or her walker (AR. at 85), that she has had a total of 15 surgical procedures, and that she attends twice-weekly appointments for an infusion treatment for a rare disorder. (AR. at 89-90.) She testified she treats with family nurse practitioner ("FNP") Janet Miller, and that she established treatment with her in 2018 or 2019. (AR. at 92.)

On April 20, 2021, ALJ Bucci issued an unfavorable decision. (AR. at 18-46.) She

---

[1] Plaintiff has a lengthy and complicated medical history. Of note here, she was diagnosed with a meningioma (a tumor in the membrane that surrounds the brain) in June 2019 after complaining of migraines, difficulty focusing, visual loss, and seizures. (Pl. Br. at 3, citing AR. at 671-72.) Neurosurgery records from July 2019 indicate that although providers concluded it was unlikely to be metastatic and that surgery was not recommended, Plaintiff elected to proceed with surgery due in part to her history of cancer, including breast cancer, for which she underwent a double mastectomy and chemotherapy before the relevant period. (AR. at 667-68.) Plaintiff had a left frontal craniotomy to remove the mass in October 2019. (AR. at 1039-40.) Later that month, she was admitted to the hospital with symptoms including left-sided weakness. (AR. at 782.) Diagnostic imaging of the brain showed a "mild degree of hemorrhage," which may have been post-operative. (AR. at 782.) She was discharged with diagnoses including a cerebrovascular accident with left-sided weakness and intracranial hypertension. (AR. at 782.) Subsequent records occasionally characterized the event as a brain bleed. (AR. at 1422, 1741.) Notably, however, Plaintiff's neurosurgeon suggested there was no evidence of brain bleed or stroke, but only post-operative changes from her left frontal craniotomy, including swelling, which had decreased since the procedure. (AR. at 1028.)

concluded Plaintiff had not engaged in disqualifying work activity, and that she suffered from medically-determinable, severe impairments, including cervical degenerative disc disease, headaches, seizures, adjustment disorder, and anxiety disorder. (AR. at 20-24.) ALJ Bucci concluded Plaintiff had no impairment or combination of impairments that met or was medically equivalent to the criteria of any listed impairment (AR. at 24-25), and that Plaintiff retained the RFC to perform light work with various postural and environmental limitations. (AR. at 27.) ALJ Bucci further limited Plaintiff to the following:

> understanding, remembering and carrying out simple instructions, consistent with a GED reasoning level of two or below; work with occasional routine changes in the work setting; working with average production standards[;] work with occasional in-person interaction with the public; work with occasional interaction with co-workers; and work with frequent interaction with supervisors.

(AR. at 27.)[2]

The ALJ concluded Plaintiff's symptom testimony was "not entirely consistent with the medical evidence and other evidence in the record . . . ." (AR. at 28.) She then summarized the evidence, noting perceived inconsistencies between it and Plaintiff's disabling symptom testimony. (AR. at 28-32.) The ALJ also discussed the medical opinion evidence of record, including the opinion of Plaintiff's treating nurse practitioner, FNP Miller, whom she found unpersuasive. (AR. at 34.) Importantly, the ALJ did not address a report of neuropsychological testing administered by Jeannine Morrone-Strupinsky, Ph.D. in May 2020. (AR. at 1416-21.) The ALJ concluded Plaintiff could perform jobs existing in significant numbers in the national economy and, consequently, that she was not disabled at step five. (AR. at 36.) Plaintiff filed an administrative appeal with the Social Security Appeals Council, which was denied. (AR. at 2-8.) She then filed this civil action in April 2022. (Doc. 1.)

///

---

[2] The Dictionary of Occupational Titles ("DOT") utilizes General Educational Development or "GED" levels to rate the degrees of formal or informal educational skills required of any job in reasoning, mathematical, and language development. DOT, (4th ed. 1991), App. C, § III, 1991 WL 688702.

**III.    DISCUSSION**

Plaintiff raises two issues: (1) whether the ALJ erred in her assessment of the opinion evidence; and (2) whether the ALJ erred by citing insufficient reasons for rejecting the Plaintiff's symptom testimony. (Pl. Br. at 1.) For the reasons explained further below, the Court reverses the ALJ decision and remands for further proceedings.

**A.    The ALJ's Discussion of the Opinion Evidence**

For disability claims filed on or after March 27, 2017 (as is the case with Plaintiff's claim), regulations provide that the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. § 404.1520c(a).[3] The Commissioner must "articulate in [the] determination or decision how persuasive [she] find[s] all of the medical opinions and all of the prior administrative medical findings in [the claimant's] case record[,]" using the factors of supportability and consistency. *Id*. § 404.1520c(b), (b)(2). "Supportability" is the extent to which "the objective medical evidence and supporting explanations presented by a medical source" support the provider's opinion. *Id*. § 404.1520c(c)(1). "Consistency" is the extent to which a medical opinion is consistent with other medical or nonmedical evidence in the file. *Id*. § 404.1520c(c)(2). In each case, "[t]he agency must articulate . . . how persuasive it finds all of the medical opinions from each doctor or other source, and explain how [it] considered the supportability and consistency factors in reaching these findings." *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022) (quotations and citations omitted). The ALJ must "provid[e] an explanation supported by substantial evidence." *Id*.

**1.    Dr. Jeannine Morrone-Strupinsky**

On May 29, 2020, Dr. Morrone-Strupinsky administered neuropsychological testing of the Plaintiff at the referral of a treating provider. (AR. at 1416-21.) She observed that

---

[3] This represents a departure from the prior regulatory regime and caselaw recognizing that treating and examining physicians were typically entitled to more weight in the analysis. *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995), as amended (Apr. 9, 1996) (superseded by regulation as stated in *Farlow v. Kijakazi*, 53 F.4th 485, 488 (9th Cir. 2022)).

the Plaintiff "demonstrated weakness in processing speed and sustained attention[,]" (AR. at 1420), but noted Plaintiff "was able to learn and retain information that was repeated." (AR. at 1420.) She also observed that, "[i]n contrast, [the Plaintiff] had mild difficulty learning and recalling narrative material that was read only once, likely due to the need to sustain her attention." (AR. at 1420.) She documented Plaintiff's reports of "significant emotional stress, sleep difficulty, and chronic pain[,]" her "significant difficulty with cognitive aspects of adaptive functioning[,]" and her "moderate current symptoms of depression and anxiety." (AR. at 1420.) Dr. Morrone-Strupinsky noted that the Plaintiff's "lapses in attention likely contribute to her memory difficulty in daily life." (AR. at 1420.)

Plaintiff argues the ALJ erred by failing to consider this medical opinion, and that the limitations Dr. Morrone-Strupinsky assigned "would significantly impact [the Plaintiff's] ability to sustain even unskilled competitive work . . . ." (Pl. Br. at 14.) Defendant counters that the Plaintiff has not identified any conflict between Dr. Morrone-Strupinsky's opinion and the ALJ's RFC, so any error is harmless. (Def. Br. at 5-6.) Plaintiff replies by noting Dr. Morrone-Strupinsky's conclusion Plaintiff has a weakness in sustained attention, which would impact her ability to work in a competitive environment. (Reply at 4.)

The Court finds the ALJ erred by failing to account for Dr. Morrone-Strupinsky's medical opinion. The governing regulation is clear: the Commissioner must "articulate in [the] determination or decision how persuasive [she] find[s] *all* of the medical opinions and all of the prior administrative medical findings in [the claimant's] case record." 20 C.F.R. § 404.1520c(b) (emphasis added). "A medical opinion is a statement from a medical source about what [the claimant] can still do despite [her] impairment(s) and whether [the claimant has] one or more impairment-related limitations or restrictions" in the physical, mental, sensory, and environmental demands of competitive work. *Id.* § 404.1513(a)(2). Because Dr. Morone-Strupinsky provided a medical opinion, the ALJ had a duty to consider it, and explain how she did, utilizing the primary factors of supportability and consistency. 20 C.F.R. § 404.1520c(b)(2).

The Court also finds the ALJ's omission is not harmless. (Def. Br. at 5-6.) It is, at best, unclear whether Dr. Morrone-Strupinsky's report conflicts with the ALJ's RFC limitations. The ALJ limited Plaintiff to "simple instructions[] consistent with a GED reasoning level of two or below[,]" "occasional routine changes in the work setting[,]" "average production standards[,]" occasional interaction with coworkers and the public, and frequent interaction with supervisors. (AR. at 27.) By comparison, Dr. Morrone-Strupinsky concluded Plaintiff "demonstrated weakness in processing speed and sustained attention." (AR. at 1420.) She concluded, however, that Plaintiff could "learn and retain information that was repeated[,]" and that she had "mild difficulty" with narrative material conveyed only once, "likely due" to some problem sustaining her attention. (AR. at 1420.) It stands to reason that if supervisors had to habitually repeat information due to Plaintiff's "demonstrated weakness in . . . sustained attention," her ability to meet production standards, adapt to changes in the work setting, or even follow the simplest instructions could be affected. (*See* AR. at 27.) There is nothing in the RFC that accounts for this deficiency, and the Court is ill-suited to make that judgment. *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989) ("[A]s we reiterate in nearly every case where we are called upon to review a denial of benefits, we are not triers of fact.") (superseded by regulation on other grounds as stated in *Cruz v. Kijakazi*, No. 22-35052, 2023 WL 2009934, at *1 (9th Cir. Feb. 15, 2023)). It is the ALJ's responsibility to translate discrete medical conclusions into RFC limitations. *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015) ("[T]he ALJ is responsible for translating and incorporating clinical findings into a succinct RFC.") The ALJ did not do that here with respect to his report, so the ALJ erred.

**2. FNP Anna Miller**

In March 2021, FNP Anna Miller drafted a notarized witness statement on the Plaintiff's behalf. (AR. at 2964-67.) FNP Miller described Plaintiff's medical history, including invasive carcinoma leading to a double mastectomy and chemotherapy; the onset of cognitive issues, migraines, and seizures; the surgical removal of a brain tumor; a hospitalization for a suspected stroke; and the declination in her mental health. (AR. at

2965-66.) She concluded the Plaintiff "cannot work due to [her] limitations and [it is expected] this will continue as a result of her stroke and medical conditions." (AR. at 2967.) She doubted Plaintiff's condition would improve "anytime soon[.]" (AR. at 2967.) In a contemporaneous medical source statement, she indicated Plaintiff suffered from several signs or symptoms relating to her cancer and treatment, including muscle pain and weakness, chronic headaches, impaired memory and attention, depression, anxiety, and "unmanaged pain." (AR. at 2968.) FNP Miller estimated Plaintiff could only sit for 30-to-45 minutes at one time and stand for five-to-ten minutes at one time. (AR. at 2969.) She opined Plaintiff could stand or walk for less than two hours total in a workday, walk zero city blocks, and would need "more than 10" unscheduled breaks lasting "more than 2" hours. (AR. at 2969-70.) She noted a significantly reduced capacity to lift and carry weights and perform various postural maneuvers, such as twisting, stooping, crouching, or climbing ladders or stairs. (AR. at 2970.) She stated the Plaintiff should elevate her legs to heart level for about 75% of the workday. (AR. at 2970.) She further estimated Plaintiff could use both hands only 10% of the day for grasping, turning, or twisting objects; her fingers on each hand only 10% of the day for fine manipulation; and her arms for overhead or in-front reaching only 1-3% of the day. (AR. at 2971.) She indicated Plaintiff would be off task for 25% of the day or more, and that she would miss more than four days of work per month on average. (AR. at 2971.) She concluded Plaintiff could not work. (AR. at 2969.)

In the decision, the ALJ found FNP Miller's opinion unpersuasive on the basis it "lacks supportability as well as consistency." (AR. at 34.) The ALJ noted FNP Miller's opinion "appears based on the claimant's subjective complaints[,]" and that she "checked the boxes on a form with minimal explanation of limitations." (AR. at 34.) The ALJ characterized the assessment as "vague and imprecise[,]" and the limitations as "extreme and inconsistent with the record as a whole." (AR. at 34.) The ALJ reasoned, for instance, that while FNP Miller opined Plaintiff suffered from "manipulative limitations[,]"she was not a specialist and "there is no indication the claimant has manipulative limitations[.]" (AR. at 34.) Finally, the ALJ noted the record did not support Plaintiff's need for an

1   ambulatory assistive device or the need to elevate her legs. (AR. at 34.) Plaintiff argues

2   these reasons are insufficient. (Pl. Br. at 15-17.)

3       The ALJ addressed the supportability and consistency of FNP Miller's opinion but

4   did not provide an explanation supported by substantial evidence for finding it

5   unpersuasive. *Woods*, 32 F.4th at 792. Regarding supportability, while the ALJ can

6   discredit opinion evidence based on the lack of explanation, 20 C.F.R. § 404.1520c(c)(1),

7   FNP Miller described Plaintiff's treatment history and symptoms in a letter accompanying

8   the check-box assessment. (AR. at 2964-67.) The ALJ's characterization of the assessment

9   as "vague and imprecise[,]" (AR. at 34), while conceivably going to the supportability

10  factor, is also not supported here. The ALJ's rationale is itself vague and imprecise: she

11  simply does not identify which aspects of the assessment would be served by further

12  clarification, nor does she explain why FNP Miller's statement accompanying the form is

13  inadequate to justify the restrictions she assigned. (AR. at 34.) FNP Miller's statement

14  detailed Plaintiff's lengthy, complicated medical history including a double mastectomy

15  and chemotherapy, the emergence of cognitive issues and migraines, and a craniotomy with

16  a subsequent brain bleed. (AR. at 2965-66.) She noted Plaintiff suffers from impaired

17  attention, concentration, and memory; chronic migraines; muscle weakness; and impaired

18  balance. (AR. at 2966.) She anticipated no medical improvement. (AR. at 2967.) FNP

19  Miller more than adequately explained her conclusions, so substantial evidence does not

20  support the ALJ's rationale.

21      Regarding consistency, the ALJ cited normal electrodiagnostic testing to support

22  her conclusion that "there is no indication the [Plaintiff] has manipulative limitations."

23  (AR. at 34, citations omitted.) But substantial evidence does not support this conclusion

24  either. There is, in fact, a substantial evidentiary basis from this nearly 3,000-page record

25  of a potential need for manipulative restrictions. Plaintiff reported her impairments

26  impacted her ability to use her hands. (AR. at 302.) Medical records indicate she

27  experienced problems with weakness or numbness on the left side. (AR. at 768, 775, 841-

28  42, 1644, 1651, 1657, 1697.) She exhibited some weakness in left-sided grip strength. (AR.

at 1216.) A prior examiner imposed some manipulative limitations during a February 2020 examination. (AR. at 1219.) In an August 2020 letter, Plaintiff's treating chiropractor limited her ability to lift, carry, and handle objects by 90%. (AR. at 1632.) Plaintiff's notes from that provider reflect numbness and weakness in one or both arms. (AR. at 1644, 1651, 1654-55, 1657-58, 1670.) NP Miller also noted weakness on the left side. (AR. at 2965.) Upon review of this lengthy record, and given the ALJ's sparse citations to supporting evidence, the Court concludes her reasoning is not properly supported here. Although this Court is not the trier-of-fact, the Court "must consider the evidence as a whole, weighing both the evidence that supports and the evidence that detracts from the [ALJ's] conclusion." *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996) (citations omitted). The Court "must give the facts a full review and must independently determine whether the [ALJ's] findings are supported by substantial evidence." *Id*. (citations omitted).

Further, while the ALJ cited evidence supporting the conclusion Plaintiff did not require an ambulatory assistive device and was not required to elevate her legs (AR. at 34), Plaintiff argues, persuasively, that FNP Miller never explicitly concluded an ambulatory assistive device was even necessary. (Pl. Br. at 17 citing AR. at 2968-72.)[4] Hence, the question of Plaintiff's need for a cane, which is addressed in further detail below, does not create an inconsistency between the record and FNP Miller's opinion. As to the need to elevate her legs, there is ample evidence in the record that Plaintiff suffered from lower extremity edema, which FNP Miller noted in her letter, and which the ALJ failed to reconcile. (AR. at 1649, 1669, 1745, 1750, 2966.) The ALJ's summary dismissal of Plaintiff's need to elevate her legs is, consequently, unsupported.

Lastly, the ALJ noted FNP Miller was not a specialist. (AR. at 34.) While this is a relevant consideration, 20 C.F.R. § 404.1520c(c)(4), it does not go to the supportability or consistency of FNP Miller's opinion, and the ALJ does not explain how this factor outweighs other regulatory factors, such as the length and purpose of FNP Miller's treating

---

[4] FNP Miller's written statement indicates Plaintiff was using a cane for ambulation in October 2019 (AR. at 2965), but there is no indication FNP Miller believed one was medically necessary at the time she completed the form.

relationship with the Plaintiff, and the frequency of her examinations of the Plaintiff. 20 C.F.R. § 404.1520c(c)(3). Notably, there is evidence FNP Miller treated the Plaintiff as early as 2019. (AR. at 92, 2965.) The Court finds the ALJ failed to cite reasons supported by substantial evidence for rejecting FNP Miller's opinion.

**B.      The Plaintiff's Symptom Testimony**

Before rejecting or discrediting a claimant's symptom testimony regarding the severity of her symptoms and limitations, the ALJ must engage in a two-step analysis: (1) she must determine whether "the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged[;]" and (2), if there is no evidence of malingering, the ALJ must cite "specific, clear and convincing reasons" before rejecting that testimony. *Garrison v. Colvin*, 759 F.3d 995, 1014-15 (9th Cir. 2014) (internal quotations and citations omitted). In this analysis, the ALJ may rely upon, among other things, "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." *Smolen*, 80 F.3d at 1284. Importantly, "the claimant need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Id*. at 1282 (citations omitted).

The ALJ found that "the claimant's statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in [the] decision." (AR. at 28.) The ALJ proceeded to summarize the medical record, where she noted, among other things, that Plaintiff was "noncompliant with physical therapy, including missing appointments and not returning messages" (AR. at 28); that she testified she used an ambulatory assistive device, but that some treatment notes indicated she exhibited a normal gait, and she

1    reported being able to stand and walk for longer periods after using a community pool for

2    walking exercises (AR. at 29); that she occasionally denied headaches despite testifying

3    she experienced severe headaches (AR. at 30); that she engaged in daily activities showing

4    she "is able to adapt and manage to situations in [an] environment[]" (AR. at 30); that she

5    denied psychiatric issues and reported cognitive improvement during treatment (AR. at 30-

6    31); and that diagnostic imaging failed to corroborate her reports of a "brain bleed" or

7    stroke. (AR. at 31.) Plaintiff argues these reasons are insufficient to discredit her symptom

8    testimony. (Pl. Br. at 19-24.)

9         The ALJ cited a clear, convincing reason to reject the Plaintiff's symptom

10   testimony. The Plaintiff testified she ambulates with the assistance of a service dog or a

11   walker, but there is evidence, some of which the ALJ cited, indicating a normal gait or the

12   ability to ambulate independently throughout 2020. (AR. at 1422, 1437, 1537, 1720, 2148.)

13   Although an ALJ may not require objective evidence "'fully corroborat[ing]' every

14   allegation within the subjective testimony[,]" an ALJ may cite inconsistencies between the

15   claimant's statements and objective medical evidence. *Smartt v. Kijakazi*, 53 F.4th 489,

16   498 (9th Cir. 2022) (quoting *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005)).

17   Because the ALJ cited at least one clear, convincing reason supported by substantial

18   evidence, any errors the ALJ may have committed with respect to the other reasons are

19   harmless. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (noting that

20   harmless errors are "inconsequential to the ultimate nondisability determination.") (internal

21   quotations and citations omitted); *Gilliland v. Saul*, 821 F. App'x 798, 799 (9th Cir. 2020)

22   (unpublished).

23   **C.    Remedy**

24        Plaintiff argues the Court should remand her claim for payment of benefits. (Pl. Br.

25   at 24.) Remand for payment is appropriate under the "credit-as-true rule" when "(1) the

26   record has been fully developed and further administrative proceedings would serve no

27   useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting

28   evidence, whether claimant testimony or medical opinion; and (3) if the improperly

1   discredited evidence were credited as true, the ALJ would be required to find the claimant

2   disabled on remand." *Garrison*, 759 F.3d at 1020. Even when these elements are satisfied,

3   the Court may remand for further proceedings when "the record as a whole creates serious

4   doubt as to whether the claimant is, in fact, disabled within the meaning of the Social

5   Security Act." *Id*. at 1021. The "automatic award of benefits in a disability benefits case is

6   a rare and prophylactic exception to the well-established ordinary remand rule." *Leon v.*

7   *Berryhill*, 880 F.3d 1041, 1044 (9th Cir. 2017) (citations omitted).

8           The Court finds that additional proceedings would serve useful purposes, such as

9   providing an opportunity to assess the vocational impact of the limitations Dr. Morrone-

10  Strupinsky identified. The parties take opposing views regarding whether that report would

11  even impact Plaintiff's ability to perform competitive work beyond the limitations in the

12  RFC. (Pl. Br. at 14-15, Def. Br. at 5-6.) Further proceedings would permit additional fact-

13  finding into its impact. Also, as discussed in further detail above, there is conflicting

14  evidence regarding the extent of the Plaintiff's use of an ambulatory assistive device or

15  service dog. Further testimony could clarify the extent of the Plaintiff's need for assistance

16  with ambulation, which was minimally addressed at her initial hearing. Moreover, Plaintiff

17  notes the ALJ did not inquire as to her reasons for not attending physical therapy

18  appointments. (Pl. Br. at 21.) Additional proceedings would provide the opportunity for

19  further factual development into Plaintiff's reasons for her noncompliance. Finally, the

20  ALJ opined FNP Miller's opinion was "vague and imprecise." (AR. at 34.) Additional

21  proceedings would provide the ALJ with another opportunity to assess the factual bases

22  for FNP Miller's conclusions. Overall, further development of the record is warranted here,

23  and the Court cannot say that the record clearly establishes Plaintiff's entitlement, or that

24  there is not serious doubt as to her eligibility. *Leon*, 880 F.3d at 1045.

25  ///

26  ///

27  ///

28  ///

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**IT IS THEREFORE ORDERED** that the April 20, 2021 decision of the ALJ is **reversed and remanded** for additional proceedings.

**IT IS FURTHER ORDERED** directing the Clerk to enter judgment accordingly and terminate this action.

Dated this 21st day of June, 2023.

Honorable Steven P. Logan
United States District Judge